UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNETTE C.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/

Case No. 24-13033

Curtis Ivy, Jr.
United States Magistrate Judge

**OPINION AND ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT (ECF Nos. 10, 12)**

## I.    INTRODUCTION

Plaintiff Annette C. filed an application for Title XVI supplemental security

income on May 5, 2022, alleging disability beginning on April 11, 2022.  (ECF

No. 7-1, PageID.242–48, 264–76).[1]  The application was denied at the initial

administrative level on September 14, 2022, and upon reconsideration on March 9,

2023.  (*Id.* at PageID.141–58).  Plaintiff then requested a hearing before an

Administrative Law Judge ("ALJ") on March 22, 2023, which took place on

August 21, 2023.  (*Id.* at PageID.66, 159).  Following the hearing, the ALJ issued

an unfavorable decision, and the Appeals Council denied Plaintiff's request for

---

[1] Plaintiff previously filed an application for Title XVI supplemental security income that was denied at the initial level on October 31, 2015.  (ECF No. 7-1, PageID.33).

review on September 19, 2024.  (*Id.* at PageID.23–25, 30–32).  The ALJ's decision

consequently became the final decision of the Commissioner of Social Security

("Commissioner").  *See Kearney v. Colvin*, 14 F. Supp. 3d 943, 949 (S.D. Ohio

2014) (citing *Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570 (6th Cir. 2003));

*McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832 (6th Cir. 2006).  The case

is now before the court for review of that decision under 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all

proceedings and entry of a final judgment by the undersigned United States

Magistrate Judge.  (ECF No. 5).

After careful scrutiny of the record and the parties' briefs, and for the

reasons below, Plaintiff's *Motion for Summary Judgment* (ECF No. 10) is

**DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 12) is

**GRANTED**, and the administrative decision is **AFFIRMED**.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  When

reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made

pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582

F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d

234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. N.L.R.B.*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487 (1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial

evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III.   STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a public assistance measure providing another resource to the aged, blind, and disabled to ensure that their income does not fall below the poverty line.  Eligibility for SSI is based on proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C).  That said, while they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for determining whether a claimant is disabled.  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. § 416.905(a).

4

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. § 416.920.[2]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

## IV. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 52 years old on the alleged disability onset date. (ECF No. 7-1, PageID.42). She lived in Monroe, Michigan, with her daughter and grandson. (*Id.* at PageID.73, 242–43). She has at least a high school education. (*Id.* at PageID.42). In the past, Plaintiff worked as a stocker and fitting room attendant. (ECF No. 10, PageID.4265). Plaintiff's primary complaints include migraines and headaches; two back surgeries; difficulty walking, standing, and sitting; unsteady balance; use of a cane; hypertension; anxiety; diabetes; kidney stones; and triglyceride and cholesterol issues. (*Id.* at PageID.4263).

Following an administrative hearing, and employing the five-step process, the ALJ found at **Step One** that Plaintiff "has not engaged in substantial gainful activity since April 11, 2022, the application date[.]" (ECF No. 7-1, PageID.35). At **Step Two**, the ALJ found that Plaintiff suffers from the following severe impairments under 20 C.F.R. § 416.920(c): lumbar degenerative disc disease, anxiety, and chronic headaches and migraines. (*Id.* at PageID.36). But the ALJ concluded at **Step Three** of the analysis that none of Plaintiff's impairments, nor a combination of her impairments, met or medically equaled the severity of one of those listed in the applicable regulations. (*Id.* at PageID.36–38). Next, the ALJ articulated Plaintiff's Residual Functional Capacity ("RFC") as follows:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR [§] 416.967(b) except: can frequently climb ramps and stairs,

6

> occasionally climb ladders, ramps, or scaffolds; frequently balance, stoop, kneel, crouch and crawl; avoid concentrated exposure to heavy moving machinery and unprotected heights, no commercial driving; can understand, remember, and carry out simple instructions; Perform simple, routine, and repetitive tasks but not at a production rate pace such as an assembly line or work requiring hourly production quotas; can occasionally adapt to changes in routine job duties; can use judgment to make simple, work-related decisions.

(*Id.* at PageID.38–39).

At **Step Four**, having consulted a vocational expert ("VE"), the ALJ concluded that Plaintiff has past work as fitting room attendant (unskilled/light), and "is capable of performing past relevant work as a fitting room attendant" as actually and generally performed as this "work does not require the performance of work-related activities precluded by the [RFC]." (*Id.* at PageID.42).  Even though the ALJ found that Plaintiff could perform past relevant work, the ALJ next made "alternative findings" for **Step Five** and concluded that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, and [RFC]." (*Id.*).  Based upon the testimony of the VE, the ALJ identified the following as representative occupations: a housekeeper (unskilled, light work), a mail sorter (unskilled, light work), and an inspector (unskilled, light work).  (*Id.* at PageID.42–43).  Accordingly, the ALJ concluded that Plaintiff "has not been under a disability [. . .] since April 11, 2022, the date the application was filed [.]" (*Id.* at

PageID.43).  Based on these findings, the ALJ denied Plaintiff's claim.  (*Id.* at PageID.30–32).

## V.     DISCUSSION

Plaintiff presents three issues for the Court to consider in its review of the Commissioner's decision: (1) Whether the ALJ erred by failing to consider the vocational impact of her non-severe hand impairment; (2) whether the ALJ erred by rejecting her need for a cane; and (3) whether the ALJ erred failing to consider Plaintiff's subjective testimony.  (ECF No. 10, PageID.4262).

### A.     Consideration of Plaintiff's Non-Severe Hand Impairment

Plaintiff argues that the ALJ erred by failing to sufficiently consider the vocational impact of her non-severe hand impairment on her RFC.  (ECF No. 10, PageID.4273).  To start, Plaintiff does not appear to challenge the ALJ's findings that her hand condition is a non-severe impairment but challenges whether its limitations should have been accounted for in the ALJ's RFC findings. Specifically, Plaintiff argues that the ALJ failed to discuss Plaintiff's hand condition in the RFC decision, and more specifically, the ALJ did not address the March 2022 MRI that showed severe tenosynovitis and tremors with an instruction to "avoid aggravating activities as well as weight bearing as tolerated on limb," or the December 2022 x-ray that showed "degenerative changes, mild soft tissue swelling, radiocarpal degenerative changes."  (*Id.* at PageID.4274–75).

The Commissioner responds that the ALJ considered Plaintiff's 2014 right hand fracture that required surgery, that she developed tenosynovitis in her right hand, that she had right carpal tunnel surgery in November 2022, and that she was seen in the emergency room in December 2022 due to wrist pain after she tripped and fell.  (ECF No. 12, PageID.4292–93).  The Commissioner argues that that ALJ "expressly stated that he considered all of Plaintiff's impairments, including impairments that were non-severe, as required by SSR 96-8p," and that "'the ALJ was not required to specifically discuss each non-severe impairment in the RFC assessment to demonstrate that the impairments were considered.'"  (*Id.* at PageID.4293) (quoting *Smith v. Comm'r of Soc. Sec.*, 715 F. Supp. 3d 994, 999 (E.D. Mich. 2024)).  The Commissioner asserts that Plaintiff is asking the Court to improperly reweigh the evidence and that her claim fails to show how a recitation of the medical evidence she discusses in her motion would support a different conclusion.  (*Id.* at PageID.4294–95).  The Commissioner also states that Plaintiff's assertion that Dr. Mark Zekaj's March 2022 treatment notes would preclude her from performing work is, at best, speculative, particularly in light of subsequent treatment records that reflect "Plaintiff could move all extremities, had adequate muscle bulk and tone, and full grip strength."  (*Id.* at PageID.4295–97).

Consideration of non-severe impairments is governed by SSR 96-8p, which states, in relevant part:

9

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

(*Id.* at PageID.950–51) (quoting SSR 96-8p). An ALJ complies with SSR 96-8p where the ALJ "stated that []he had carefully considered the entire record and 'all symptoms'" in the RFC assessment and explicitly acknowledgment that he was "required to comply with SSR 96-8p's mandate to 'consider all of the claimant's impairments, including impairments that are not severe'" in the RFC assessment. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020).

In applying *Emard*, district courts have used three markers: (1) An express reference to SSR 96-8p; (2) A discussion of the functional limitations imposed by the plaintiff's non-severe impairments at step 2; and (3) A subsequent assurance that the ALJ had considered the entire record and all symptoms in the RFC assessment. (*Id.* at PageID.951–52) (citing *Stevens v. Comm'r of Soc. Sec.*, No. 1:24-CV-220, 2024 WL 4529360, at *4 (W.D. Mich. Sept. 27, 2024), *report and recommendation adopted*, 2024 WL 4528023 (W.D. Mich. Oct. 18, 2024)) (citations omitted). The ALJ expressly referenced 96-8p and stated that he found

10

"these conditions are not severe but have accounted for all impairments in the [RFC] as necessary taking into account the totality of the record," but Plaintiff asserts that the ALJ did not sufficiently discuss the functional limitations imposed by her hand impairment at Step Two.  (ECF No. 7-1, PageID.35–36).

During the August 2023 hearing, Plaintiff testified that she experienced numbness and tingling in her hands.  That said, she was unable to definitively provide how often, only that it is not every day and that "[i]t just happens every so often."  (*Id.* at PageID.107).  She also testified that she slipped and fell at Walmart causing broken bones in her right hand and the doctor had to place metal in her hand to assist in healing.  (*Id.* at PageID.107–08).  She stated that a specialist eventually found that her hand had healed well enough to remove the metal, and that she had carpal tunnel in that hand as well that he addressed during the surgery, but she still experienced numbness.  (*Id.* at PageID.108).

Upon finding that Plaintiff's medically determinable impairment of a right hand condition was not severe at Step Two, the ALJ was required to consider it along with her severe impairments in conducting the RFC analysis.  When formulating an RFC, an ALJ must "'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'"  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 726 (6th Cir. 2014) (quoting 20 C.F.R. § 404.1523); *LaRiccia*

11

*v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all [her] limitations, not just those that are 'severe.'").

This standard recognizes that "the definition of a non-severe impairment contemplates that non-severe impairments may very well impose *some* type of limitation on basic work activities" and that "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose *any* work-related restrictions." *Patterson v. Colvin*, No. 5:14 CV 1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (quoting *Katona v. Comm'r of Soc. Sec.*, No. 14-cv-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) (citing 20 C.F.R. 404.1521(a)) (citation modified).

An ALJ's disability determination is not supported by substantial evidence where all impairments, both severe and non-severe, are not considered in the RFC analysis. "Courts within the Sixth Circuit have repeatedly held that 'an ALJ's failure to adequately explain how an impairment affects an individual's RFC may constitute reversible error.'" *Patterson*, 2015 WL 5560121, at *4 (quoting *Katona*, 2015 WL 871617, at *7). Even if an ALJ finds it unnecessary to impose any further restrictions due to a claimant's non-severe impairments, the ALJ is required to articulate at this step in the analysis why these impairments do not require a more limited RFC. *Id.* ("Where an ALJ determines that non-severe impairments

do not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusions.'") (quoting *Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013) (citing *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009)).

At Step Two, the ALJ acknowledged Plaintiff had a determinable impairment of a right hand condition but found that it was not severe because the condition "has not met the durational requirements and/or imposes only a slight abnormality or no more than minimal limitations on the ability to do basic work activities." (ECF No. 7-1, PageID.36). Upon review of the relevant medical evidence, the ALJ found:

> The claimant suffered a right distal radius fracture in 2014 that required an open reduction with internal fixation in March 2022 after which the claimant developed symptoms of tenosynovitis in the right hand (Exhibit 1F/125). Later that year, she underwent right carpal tunnel surgery on the right wrist and wrist hardware was removed. However, she tripped and fell landing on the wrists and visited the emergency room for pain. There was some swelling, tenderness, and decreased range of motion present. However, x-rays were negative for fracture. Medication for pain and a splint was prescribed for contusion (Exhibit 1F/16, 18). The claimant testified to numbness and tingling of the hands every so often (hearing testimony) but there has been no further treatment for the hands or for loss of functionality.

(*Id.* at PageID.36–37). The ALJ acknowledged that in making his findings, he "must consider all of the claimant's impairments, including impairments that are not severe." (*Id.* at PageID.35) (citing 20 C.F.R. §§ 416.920(e), 416.945; SSR 96-8p). Also, at the end of his Step Two analysis, the ALJ stated that although she

13

found some of Plaintiff's conditions, including her right hand condition, to be not severe he "accounted for all impairments in the [RFC] as necessary taking into account the totality of the record." (*Id.* at PageID.36).

It is clear that the ALJ considered the objective and subjective evidence concerning Plaintiff's right hand condition, including her reports of numbness and tingling every so often, and that treatment records reflect no further treatment following treatment for a contusion following a trip and fall incident, but he did not include Plaintiff's alleged functional limitation in the RFC. Plaintiff's arguments that the ALJ did not address specific notations in the March 2022 or December 2022 treatment records and that he needed to explain why Plaintiff's non-severe right hand condition resulted in no limitations are unavailing. ALJs are "not required to specifically discuss each non-severe impairment in the RFC assessment to demonstrate that the impairments were considered." *Smith v. Comm'r of Soc. Sec.*, No. CV 24-125, 2026 WL 732770, at *2 (E.D. Ky. Mar. 15, 2026) (citations omitted); *Plotkowski v. Comm'r of Soc. Sec.*, No. 2:20-cv-12011, 2022 WL 413371, at *6 (E.D. Mich. Jan. 18, 2022) ("First, while the regulations require the ALJ to 'consider' the possible effect of a non-severe impairment on the claimant's capacity to work, there is no accompanying requirement that the RFC must include restrictions reflecting a non-severe condition in the RFC."), *adopted sub nom. Plotkowski v. Saul*, 2022 WL 407079 (E.D. Mich. Feb. 9, 2022); *see also Jody S. v.*

14

*Comm'r of Soc. Sec.*, No. 1:24-CV-11915, 2025 WL 2099968, at *14 (E.D. Mich. July 25, 2025) (finding the plaintiff's reliance on SSR 96-8p was misplaced because the agency only requires that the ALJ "consider" limitations and restrictions).

The ALJ explicitly referenced SSR 96-8p.  The ALJ also explicitly considered Plaintiff's right hand condition including the objective treatment records, and discussed and cited to the March 2022 and December 2022 treatment records that Plaintiff claims were not considered, but found that there was "no further treatment for the hands or for loss of functionality" after she suffered a contusion in December 2022 after a fall.  As a result, the ALJ found that her right hand condition "no more than minimally limit[ed] the claimant's ability to perform basic work activities."  Finally, the ALJ also explicitly stated the non-severe impairments were considered along with her other severe conditions in determining the Plaintiff's RFC.  SSR 96-8p; *see Stephen T.C. v. Comm'r of Soc. Sec.*, No. 1:23-cv-10821, 2024 WL 948592, at *7 (E.D. Mich. Mar. 5, 2024) ("Often, an ALJ's summary of the evidence related to a nonsevere impairment suffices to explain why the ALJ did not find any corresponding functional limitations without any discussion 'tying' that summary to the ALJ's finding.") (citations omitted).  Thus, the ALJ properly applied SSR 96-8p and *Emard*.

It is Plaintiff's burden to show that the ALJ's decision is not supported by substantial evidence, but she did not meet that burden.  That there may be evidence supporting Plaintiff's position is not a basis to reverse the ALJ's decision.  The decision on this issue is supported by substantial evidence, so it is affirmed.

### B.    Medical Necessity of Plaintiff's Cane

Plaintiff's next issue focuses on her use of a cane and the ALJ's rejection of the medical necessity of a cane.  (ECF No. 10, PageID.4277).  She argues that the ALJ failed to consider objective evidence and her testimony that supports the use of a cane and that the ALJ failed to articulate his reasoning for not considering cane use in the RFC.  (*Id.* at PageID.4277–80).  Specifically, Plaintiff cites to medical records that note "mild weakness to resistance" in extremities, dizziness on standing, bilateral upper extremity tremors, an antalgic gait, and observations that she ambulated with a cane, and accuses the ALJ of performing a selective reading of medical records.  (*Id.* at PageID.4265–71, 4279).

An ALJ's conclusion that a cane or other assistive device is not medically necessary can be error when: "(i) the claimant has been prescribed an assistive device; (ii) the ALJ did not include the use of the device in the RFC assessment; and (iii) did not provide an explanation for the omission." *Adrianne N. v. Comm'r of Soc. Sec.*, No. 23-12791, 2025 WL 815626, at *3 (E.D. Mich. Jan. 3, 2025), *report and recommendation adopted*, 2025 WL 383156 (E.D. Mich. Feb. 4, 2025)

(quoting *Austin v. Comm'r of Soc. Sec.*, No. 1:19-CV-2380, 2020 WL 9460505, at *13 (N.D. Ohio July 7, 2020), *report and recommendation adopted*, 2021 WL 1540389 (N.D. Ohio Apr. 19, 2021)). The ALJ did not include the use of a cane in the RFC here, but he explained the omission. As explained below, that omission is supported by substantial evidence.

During the August 21, 2023, hearing before the ALJ, Plaintiff testified that she had difficulty walking long distances and she would usually use a wheelchair in the grocery store, but otherwise she used her cane to assist her in walking. (ECF No. 7-1, PageID.90–91). Plaintiff stated that she was prescribed a cane during therapy following her back surgery and was told to keep using it. (*Id.* at PageID.91). She indicated that she does not use a cane at home, but when she leaves the house in case she were to become unsteady on her feet, she likes to have her cane as a backup in case she cannot grab onto something to steady herself. (*Id.*).

Upon review of the evidence, the ALJ found:

Furthermore, there is no medical need for assistive devices involving the use of both hands, or the inability to use one upper extremity to independently perform work-related activities. The claimant has been noted to walk with a cane that she was prescribed after back surgery per her testimony, but there is no documented medical need for an assistive device for her to ambulate and she has no problems with the use of the upper extremities.

(*Id.* at PageID.37).  The ALJ also stated that Plaintiff "has been noted to ambulate with a cane, that she testified was given to her after lumbar surgery in 2019," and that as recent as March 2023, she presented with a normal gait, but she has also displayed an antalgic gait.  (*Id.* at PageID.40, 4147, 4162, 4242).  The ALJ indicated that he "carefully considered the claimant's statements concerning [her] impairments and the effects of these on the ability to perform work activity," including her difficulty walking and the use of a cane, among others.  (*Id.* at PageID.39).

"SSR 96-9p states, 'To find that a hand-held assistive device is medically required, there must be medical documentation [1] establishing the need for a hand-held assistive device to aid in walking or standing, and [2] describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).'" *Palmer v. Comm'r of Soc. Sec.*, No. 19-CV-11020, 2020 WL 5209358, at *4 (E.D. Mich. Sept. 1, 2020) (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)).  The mere prescription of a cane does not establish a cane is medically required under 96-9p.  *Salem v. Colvin*, No. 14-CV-11616, 2015 WL 12732456, at *4 (E.D. Mich. Aug. 3, 2015) (finding that ALJ did not err in not including a limitation for a cane, when it had been prescribed, but the prescription did not "indicate the circumstances in which [the claimant] might require the use of

18

a cane.");  *Schwartz v. Comm'r of Soc. Sec. Admin.*, No. 4:18-CV-12190, 2019 WL 3943863, at *6 (E.D. Mich. Aug. 1, 2019), *report and recommendation adopted* 2019 WL 3936666 (E.D. Mich. Aug. 20, 2019); *Marko v. Comm'r of Soc. Sec.*, No. 2:16-CV-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (holding that nothing in a "mere prescription for a cane provides evidence to indicate the frequency with which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work.").

The ALJ indicated that per Plaintiff's testimony she was prescribed a cane following a back surgery, but found there was "no documented medical need for an assistive device for her to ambulate." (ECF No 7-1, PageID.54).  Plaintiff simply cites treatment records that reflect weakness to resistance in extremities, dizziness on standing, and observations of bilateral upper extremity tremors and that she ambulated with a cane, but as the Commissioner correctly argues, Plaintiff does not show how these records translate to a showing that the cane is medically necessary.  While the record is clear that Plaintiff uses a cane, more is needed to establish that the cane is medically required.  *See Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, at *12 (N.D. Ohio June 7, 2018), *report and recommendation adopted*, 2017 WL 2720332 (N.D. Ohio June 23, 2017) ("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required.").

19

The ALJ articulated specifically his reasoning for discounting Plaintiff's allegations that her cane was medically necessary and for finding the available record does not reflect that the cane was medically necessary. *Perdue v. Colvin*, No. 15-14006, 2017 WL 362668, at *6 (E.D. Mich. Jan. 9, 2017) *report and recommendation adopted*, 2017 WL 976790 (E.D. Mich. Mar. 14, 2017) (finding that the claimant was properly limited to light work "given the lack of documentation that a cane was medically necessary. . . ."). While the ALJ did not specifically discuss the treatment records cited by Plaintiff, the ALJ indicated that he reviewed the entire record, specifically addressed the treatment records, including those showing antalgic gait, and found that the medical necessity of the cane was not supported by the record during the period on appeal. And, of course, the ALJ need not discuss every piece of evidence in the record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in [her] written decision every piece of evidence submitted by a party.") (citation modified).

Here, while Plaintiff testified that she was prescribed a cane following back surgery, the record does not reflect a prescription, however, even accepting this as true, the mere prescription of an assistive device does not establish that it is medically required under SSR 96-9p. *Salem*, 2015 WL 12732456, at *4; *Marko*, 2017 WL 3116246, at *5. The undersigned finds the record before the ALJ, which

the ALJ referenced, did not support the medical necessity of a cane during the relevant period and the ALJ was not, therefore, required to discuss the cane in formulating the RFC. Here, substantial evidence supports the ALJ's conclusion, and Plaintiff has not demonstrated that she is more limited than her RFC.

In summation, while the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *TNS, Inc.*, 296 F.3d at 395 (quoting *Universal Camera Corp.*, 340 U.S. at 487); *Blakley*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273). Ultimately, the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Here, while there is evidence in support of Plaintiff's position that she used a cane, as well as her own statement that she began using a cane after back surgery and continued to use it to assist her in case she became unsteady, there is substantial evidence in support of the ALJ's RFC conclusion which omits a limitation for cane use. Accordingly, the ALJ's decision in this regard is affirmed.

21

### C.    Evaluation of Plaintiff's Subjective Reports

Finally, Plaintiff avers that the ALJ failed to properly consider her subjective testimony.  (ECF No. 10, PageID.4280).  Specifically, Plaintiff asserts that the ALJ did not properly consider the entire record concerning her back and hand conditions prior to rejecting her subjective testimony.  (*Id.* at PageID.4281–83).

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating these symptoms.  *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 542 (6th Cir. 2014); *Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917 (6th Cir. 2011); *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).  First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms.

Second, the ALJ "must evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work."  20 C.F.R. § 416.929(c); *see also* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  In evaluating a claimant's symptoms at the second step of the analysis, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record.  Beyond medical evidence, the ALJ should consider seven factors.  These factors are: (1) the individual's daily activities; (2)

the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* SSR 16-3p, 2016 WL 1119029, at * 7.  The ALJ need not exhaustively discuss each of these factors or all of the evidence in the record but need only acknowledge the factors and discuss the evidence that supports the decision.  *See Tonya L. v. Comm'r of Soc. Sec.*, No. 1:25-CV-10175, 2026 WL 270223, at *13 (E.D. Mich. Feb. 2, 2026) ("The ALJ is not required to discuss methodically each [factor], so long as he acknowledged and examined those [factors] before discounting a claimant's subjective complaints.") (quoting *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012)) (citation modified).

Plaintiff argues that the ALJ did not consider all of the record before finding her statements inconsistent with the record.  The undersigned disagrees.  Although Plaintiff entitles the issue as addressing ALJ's failure to properly consider her subjective testimony, the argument presented is essentially contesting whether the

ALJ properly considered all of the objective medical evidence prior to finding that her subjective testimony was inconsistent with the objective evidence.  Her argument also focuses solely on her lower back and hand conditions.

Plaintiff's argument related to her hand condition rehashes the same medical evidence previously raised under her first issue on appeal.  But the undersigned already found that substantial evidence supported the ALJ's findings at Step Two. *Supra* Section V.A.  That discussion is incorporated here, but in sum, the ALJ acknowledged Plaintiff had a determinable impairment of a right hand condition but found that it was not severe because the condition "has not met the durational requirements and/or imposes only a slight abnormality or no more than minimal limitations on the ability to do basic work activities."  (ECF No. 7-1, PageID.36). After discussing the medical evidence and citing to Plaintiff's testimony of "numbness and tingling of the hands every so often," the ALJ noted the evidence does not reflect any "further treatment for the hands or for loss of functionality." (*Id.* at PageID.36–37, 107).  Plaintiff's testimony did not raise any functional limitations that are inconsistent with the ALJ's findings.  The Court already held the ALJ's findings at Step Two related to her non-severe hand condition are supported by substantial evidence, and Plaintiff's argument here amounts to a request that the Court reweigh the evidence, which it will not and cannot do.

At Step Four, the ALJ provided an introductory statement that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and explicitly discussed applying the two-step process, 20 C.F.R. 416.929, and SSR 16-3p. (ECF No 7-1, PageID.39). After the introductory statement the ALJ indicated that he considered Plaintiff's statements concerning her impairments and the effects of those impairments on her ability to perform work activity, then discussed her testimony and the evidence. (*Id.* at PageID.39).

With regard to Plaintiff's back condition, the ALJ noted that Plaintiff testified to living with her daughter and three-year-old grandchild, and experienced pain in her "lower back and both legs that keeps her from cooking, performing household chores, caring for their two dogs, or watching her grandchild when her daughter is at work." (*Id.*). She also testified that she could only stand for five minutes and could not sit for very long. (*Id.*). The ALJ noted that "aside from treating with medication under the care of pain management, she has not engaged in other modalities of conservative treatment (no physical therapy for about 1.5 years)" and she indicated that she was not amenable to further surgery, were it to be recommended. (*Id.*). The ALJ found that "[o]verall, the record fails to document a significant level of treatment that could be expected for disabling conditions." (*Id.*). The ALJ further found that although the record does

25

demonstrate that Plaintiff suffers from severe impairments "that impose difficulty performing some tasks," the record "does not demonstrate limitations of such severity that would preclude performance of all work on a regular and continuing basis." (*Id.* at PageID.40).

The ALJ discussed Plaintiff's history of lower back surgery in June 2019 and residual lower back pain that was treated with pain management via pain medications, muscle relaxants, and physical therapy. (*Id.*). The ALJ stated that there is MRI evidence of degenerative and post-operative changes in her lower back, and that she sought pain management treatment in July 2022, reporting pain that radiated to her lower extremities but she did not experience numbness or tingling. (*Id.*). She found medication and rest to be helpful, and she used a cane to get around. (*Id.*). On exam, tenderness to palpation and decreased lumbar range of motion were noted, but straight leg raises, reflexes, and sensations were negative bilaterally, muscle strength was noted as 5/5, and it was noted that Plaintiff did not exercise. (*Id.*). The ALJ also stated that the record shows that she displayed an antalgic gait, that she used a cane that was provided to her after lumbar surgery in 2019, and that she took multiple medications for chronic back pain, segmental and somatic dysfunction of the sacral region, and cervicalgia. (*Id.*).

The ALJ also discussed Plaintiff's neck condition and her headaches and migraines. (*Id.* at PageID.40–41). The ALJ then found unpersuasive the state

26

agency medical consultants' September 2022 and March 2023 findings that the record had insufficient evidence to support a severe physical impairment because the ALJ found that evidence added to the record after those findings as well as Plaintiff's hearing testimony "support the presence of the severe impairments that would allow the claimant to perform at the light level of exertion as discussed." (*Id.* at PageID.40–41).  The ALJ concluded that he found "the claimant's allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations partially consistent with the objective evidence.  While the medical and other evidence of record support the allegations regarding the nature of these symptoms, it fails to support the contentions regarding the severity of the related functional restrictions."  (*Id.* at PageID.41).

Through this discussion, the Court can trace the path of the ALJ's reasoning.  The evidence discussed in the decision conflicts with Plaintiff's subjective complaints.  By discussing the medical records, including those favorable to Plaintiff, the ALJ was doing more than "cherry-pick[ing] facts to support a finding of non-disability" as Plaintiff accuses him of doing.  (ECF No. 10, PageID.4282).  Rather, he was showing how Plaintiff's statements of disabling symptoms were inconsistent with the other evidence in the record.  This is the ALJ's obligation.  And contrary to Plaintiff's contention, the ALJ did not ignore evidence that corroborates her statements.  Of the evidence Plaintiff claims the ALJ failed to

consider, the ALJ expressly discussed her carpal tunnel release procedure; her two back surgeries; the December 2022 emergency room visit after she fell and suffered a wrist contusion; and, although the ALJ did not explicitly discuss the notations of tremors, he cited to the March 2022 treatment records that include a notation of a baseline history tremors.  Notably, Plaintiff does not point to any testimony, the ALJ's treatment of her testimony or the medical evidence, or argue how the records she cited to would require greater functional limitations than those already provided; rather, she simply highlights evidence she believes are "highly probative" and should have been discussed and given more weight by the ALJ. [3]

ALJs are not required to articulate how they considered each piece of evidence, so Plaintiff's assertion that the ALJ needed to expressly discuss the portions of the records she highlights, which actually were generally discussed and cited by the ALJ, is not well taken.  *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky*, 167 F. App'x at 507–08) (ALJs are not "required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.").  The ALJ cited substantial evidence in support of the decision that Plaintiff's subjective

---

[3] Plaintiff is, to an extent, asking the Court to reweigh the evidence and come to a different conclusion.  As explained above, the Court does not reweigh the evidence, and even if the Court would conclude differently than the ALJ, the ALJ's decision is upheld so long as it is supported by substantial evidence.

statements are inconsistent with the record as a whole.  *Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 478 (6th Cir. 2018); *see also Dyson*, 786 F. App'x at 589 ("None of [the plaintiff]'s records shed light on his level of impairment during that relevant time.  And the evidentiary burden is [the plaintiff]'s to carry.").  The Court cannot remand the matter to the Commissioner if substantial evidence supports the ALJ's decision, even if it would have come to a different conclusion.

In sum, the ALJ followed the two-step process to analyze Plaintiff's symptoms.  In the first step, the ALJ found objective medical evidence supporting medical conditions, both severe and non-severe.  In the second step, after enumerating the subjective symptoms, the ALJ found that Plaintiff's subjective symptoms were partially consistent with the objective evidence, because "[w]hile the medical and other evidence of record support the allegations regarding the nature of these symptoms, it fails to support the contentions regarding the severity of the related functional restriction."  (ECF No. 7-1, PageID.41).  An ALJ may reasonably discount a plaintiff's subjective testimony concerning the severity of her condition because her testimony was inconsistent with medical evidence in the record.  *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (per curiam).

The undersigned finds no reversible error in the treatment of Plaintiff's subjective complaints.  *Kosirog v. Berryhill*, 354 F. Supp. 3d 835, 844–45 (M.D.

29

Tenn. 2019) ("A hearing officer's subjective symptom evaluation is entitled to 'great weight and deference,' and this Court's review is limited to determining whether the hearing officer's reasons to discredit the subjective symptoms are supported by substantial evidence in the record.") (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)); *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020) ("It is for the [ALJ], not the reviewing court, to judge the consistency of a claimant's statements.").

## VI.    CONCLUSION

Plaintiff has the burden of proof on her statements of error. *Walters*, 127 F.3d at 529. Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, Plaintiff's *Motion for Summary Judgment* (ECF No. 10) is **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 12) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.


Date: March 30, 2026                     s/Curtis Ivy, Jr.
                                         Curtis Ivy, Jr.
                                         United States Magistrate Judge